Christian, J.
The record in this case presents a single question. The facts are few and simple and may be stated as follows: W. W. Brown purchased of D. H. Gillespie in April, 1860, a tract of land, and after paying a ■certain amount in cash, executed his bond for $540, due and payable on the 1st day of September, 1861, that being the balance of the purchase money. This bond was assigned by Gillespie to S. S. Taylor for value. Taylor left the State of Virginia in the early part of the year 1860, and left the bond in the hands of S. L. Graham, who executed and delivered the following paper: “ S. S. Taylor left in my hands a note on Wm. W. Brown for $540, executed to D. H. Gillespie, due the 1st day of September, 1861; which I will hold subject to the order of *136 S. S. Taylor.”¿Signed S. L. Graham, and dated April 20th, 1860.
The record further shows, that on the 29th December, 1862, Brownypaid over to Graham the sum of $440 in Confederate money, which was received by Graham, credited on the bond, and deposited by him in the Northwestern Bank to the credit of Taylor. Taylor afterwards became a lunatic. His committee, the sheriff of Tazewell county, filed his bill in the circuit court of said county, in which he set forth the above facts, and also alleged the insolvency of Graham, and insisted that the payment of $440 in Confederate money was without authority; that Graham was the mere custodian of the bond, and had no authority to collect the same, and that Brown paid the same at his peril, and was still bound to the plaintiff for the whole amount of said bond; and the bill prayed that the credit on said bond might be cancelled and annulled, and that Brown might be required to pay said bond, principal and interest, to the plaintiff, the committee of Taylor.
Brown and Graham were made parties defendant to this bill. Both answered the bill, and their depositions were taken and read in the cause. And the cause coming on to be heard on the bill and answers and depositions of witnesses, before the circuit court of Tazewell, that court, “being of opinion that the defendant, S. L. Graham, had no power or authority to receive the sum of $440 of W. W. Brown, as alleged to have been paid by said Brown to him, and credited on the bond filed, with the answer of defendant, Graham,” adjudged, ordered and decreed, “that the said credit be annulled, and that the complainant recover of the defendant (Brown) the full amount of said bond, to wit, the sum of $540, with interest from the 10th April, 1865 (the court abating the interest from the maturity of said bond to the 10th April, 1865, the plaintiff consenting to said abatement); and it appearing to the *137 court that the sum is a lien upon the land of said Brown, it was further ordered, that unless said Brown should pay and satisfy the decree before the — day of October, 1878, then the said land should be sold by commissioners appointed for that purpose, according to the terms specified in said decree.
To this decree, an appeal was allowed by one of the judges of this court.
The court is of opinion that there is no error in the decree of the circuit court.
Graham was neither the attorney nor the general agent of Taylor. He had only a special authority as special agent, constituted by the very terms of the paper executed by him, and that was simply “to hold the bond subject to the order ” of Taylor. As between Taylor and Graham, there can be no question as to the special agency and special authority conferred. As to third parties, it is true, that this special authority might not be known, yet in order to relieve Brown of the payment of this debt, it must be held that the mere possession of the bond carried with it the authority to collect it. It is upon this theory, and this alone, that the appellant can succeed here. Therefore the only question we have to determine is, Hid the mere possession of the bond in the hands of Graham authorize him to receive the money of Brown, and does the payment by Brown discharge him from liability pro tanto ? We think not. We do not mean to say that there may not be circumstances connected with its mere possession which will show apparent authority to collect and justify payment; but no such circumstances relied upon are sufficient to take the case out of the general doctrines herein asserted. The possession of certain kinds of commercial paper, such as negotiable notes and bills of exchange, payable to order, and which pass from hand to hand by delivery, and are used as money in the multiform transactions of trade and commerce, carries with it the *138 authority to collect by the holder. This grows out of the necessities of commerce and the usages of trade. But the mere possession of a bond or other documentary evidence of debt, is not such an evidence of property as will justify a payment to the holder without an authority, express or implied, from the true owner. To hold otherwise, would produce mischiefs without remedy. Bonds and other documentary evidence of debt, are often pledged as collaterals or held as security. They are offen lost or stolen. It will not do, therefore, to say that a party having possession of such a paper, no matter how obtained, or for what purpose held, may collect it without authority, either expr'ess or implied, from the true owner. Indeed, at common law, the property in these ehoses in action could not pass even where they were actually assigned and delivered. Under our law, assignments are permitted, and sometimes a transfer without assignment is held to pass the right of properety. But to such transfer two things are necessary: 1. Consideration; and 2. The act of transfer. It is not a mere delivery of possession, without intent to pass the property, that constitutes the transfer. There must be an intent to transfer, and if there is no such intent, the holder has no right of property. He has no right to sell, nor has he a right to receive payment from the debtor, unless by authority express or implied.
Every consideration that applies the principle of caveat emptor to the case of sales of property by one having possession without title, has additional force in the case of bonds and other ehoses in action; and accordingly the courts have uniformly decided that as to them the rule caveat emptor applies. See opinion of Tucker, P., in Wilkinson & Co. v. Holloway, 7 Leigh, 277.
The court has approved the doctrine of caveat emptor in a very recent case, and one which was much stronger than the one at bar. It was held in Hess, &c., v. Rader and wife, 26 Gratt. 746, and Lloyd v. Erwin’s adm’r, 29 *139 Gratt. 598, that the payment of a bond given for the purchase of land, made by a commissioner of a chancery court, and paid by the purchaser to the commissioner named in the decree, was a void payment, because the commissioner had not given the bond required by the court, and was therefore without authority to collect the bond of the purchaser in his hands.
Upon the principles herein declared, and in accordance with the decisions of this court, it is plain that there is no error in the decree of the circuit court of Tazewell county, and that the same be affirmed.
Anderson and Bures, J’s, concurred in the opinion of Christian J.
Staples, J., concurred in the results, but not in all the reasoning.
Decree affirmed.