# WHEELING.

## DONAHUE et al. v. FACKLER et al.

### Submitted June 23, 1882—Decided December 9, 1882.

1. Commissioners are appointed to make sale of land under a decree of court, requiring them to give bond before proceeding to act. The sale is directed to be made for part cash and the residue on credit, and the sale is made as directed, the cash payment made to the commissioners and bonds executed by the purchaser to the commissioners for the deferred payments. The commissioners fail to give bond as required, and before the sale is reported by them or any order made for the collection of the sale bonds, the purchaser pays said bonds to the commissioners, who were also the counsel who had instituted and prosecuted the suit for the owners of the land sold and among whom the proceeds were to be distributed, but the purchase-money was never paid over to said distributees. HELD:

     I. The said persons appointed commissioners had no authority to receive said purchase-money, either as commissioners or as counsel for the parties, and the purchaser is bound to pay it again. (p. 129.)

     II. The commissioners, having received the money without authority, are liable in this suit to the purchaser for the amount so paid them, or either of them, with interest thereon from the time it was paid to them. (p. 132.)

2. When it is uncertain whether or not certain persons have an interest in land, it is error to decree a sale of such land without making such persons parties to the suit. (p. 133.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Putnam, rendered on the 7th day of November, 1879, in a chancery cause in said court then pending, wherein Thomas M. Donahue and others were plaintiffs, and and Wiley Fackler and others were defendants, allowed upon the petition of Francis J. Gray.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

SNYDER, JUDGE, furnishes the following statement of the case:

Thomas M. Dunahue and others instituted this suit in the circuit court of Putnum county in August, 1858. In its inception it was a friendly suit to sell certain lands lying in said county belonging jointly to the plaintiffs and defendants and which, it was alleged and proven, could not be partitioned in kind with advantage to the owners. The cause was matured for hearing and a decree entered appointing commissioners to make sale of said lands. The said commissioners, pursuant to said decree, made sale thereof on September 10, 1859, to James M. Gray, and by a decree of December 15, 1869, said sale was confirmed. From said decree and a subsequent decree of October 24, 1873, the said James M. Gray appealed to this Court. A sufficient statement of the nature and object of the suit and the proceedings had therein prior to and on the 25th day of February, 1875, the date on which the decision of this Court was pronounced upon the former appeal, may be found in the opinion of Paul, Judge, reported in 8 W. Va. 249

After the cause had been remanded by this Court, the plaintiffs filed in the circuit court of Putnum county an amended bill in which, after giving a synopsis of the proceedings theretofore had therein, they aver that Andrew Parks and James W. Hoge as special commissioners had surrendered to the defendant James M. Gray all three of the bonds for deferred payments on the lands sold by them, and that on the first of said bonds are these words endorsed:

"By $325 paid Thomas Donahue, 10th September, 1859.
"PARKS & HOGE."
"Paid to Parks & Hoge and Donahoe & Austin.
"JAMES W. HOGE."

The second of said bonds is endorsed: "Received payment. Parks and Hoge." And that the third contains an endorsement in the same words as the second and with the same signatures.

They, also, allege that no part of said purchase-money was paid in such manner as to constitute a payment by the said Gray; that a large portion was paid in Confederate money and in bacon, lard, &c., to the said Parks and Hoge commissioners, without the knowledge or consent of any of the beneficiaries of the fund, either plaintiffs or defendants; that

said bonds were surrendered before said sale was confirmed; that said commissioners were never authorized to collect said bonds, nor had they as such commissioners ever executed any bond as required by the decree of sale; that said Andrew Parks has departed this life and John W. Sentz has been appointed his administrator; and that James W. Hoge the surviving commissioner declines to act further in the premises. They make the defendants to their original bill, John W. Sentz administrator of Andrew Parks, deceased, and James M. Gray defendants, and pray, that said James M. Gray may be compelled to account for and pay the whole of said purchase-money with its accrued interest; that said James W. Hoge may be required to disclose fully what consideration was given to him and his co-commissioner Parks for the surrender of said sale bonds, what portion was lawful money, and if it be ascertained that any portion of said purchase-money has been paid by said James M. Gray to said commissioners in such manner as to constitute a credit upon said bonds, that they or either of them be required to account for same; and for general relief.

The defendant James M. Gray, having departed this life, Frances J. Gray, his widow and administratrix, and his children and heirs at law were made defendants; and by an order, entered October 25, 1876, it is shown that the administratrix and heirs demurred to the plaintiffs' said amended bill which demurrer the court overruled. On the 28th day of April, 1877, the said administratrix and heirs of James M. Gray, deceased, filed their answer to said bill in which they aver, that all the purchase-money for the said land was paid by said James M. Gray in a valid manner to parties authorized to receive the same and in such a way as to discharge the said Gray and his estate from all liability, and to entitle his heirs to a deed for said land from the court; that no part of said money was paid in Confederate currency or anything else except lawful money; that said Andrew Parks and James W. Hoge, the commissioners appointed to sell said land, were also partners in the practice of the law under the firm name of Parks & Hoge, and were as such partners the attorneys of the plaintiffs and all the other original parties to this suit and all of the persons who had any interest in the

said land at the time of the sale thereof and until the same was paid for by said Gray, and as such attorneys they prosecuted this suit, made said sale and collected the purchase-money therefor; that the said Gray paid said purchase-money in full for said land, partly to the parties to whom the same was coming and the residue to said Parks and Hoge as commissioners or as attorneys for the parties entitled to receive it. And they exhibit with their answer two orders— the one signed by the plaintiff, Thomas M. Donahue, acknowledging the payment to him, on September 10, 1859, of three hundred and twenty-five dollars by James M. Gray and directing said commissioners, Parks and Hoge, to credit said amount on the bonds given by said Gray for the land sold by said commissioners, and the other signed by P. S. Austin acknowledging the payment of one hundred and ninety-seven dollars and fifty-three cents on May 3, 1860, by Gray to him upon his interest in said purchase-money and directing said commissioners to credit said Gray's bonds for said sum.

James W. Hoge in his answer admits the institution of the suit, the sale of the land and proceedings had in the cause as stated in the plaintiffs' bills; that he was the junior commissioner and almost the entire business was transacted by his co-commissioner, Parks; that he cannot explain why a report of the sale had not been made to court and he always believed such report had been made until recently; that whatever payments were made by Gray, on the sale of lands, to him and his co-commissioner were made separately and none of them were joint payments; that the first sale bond was paid as follows: To Thomas M. Donahue, on September 10, 1859, three hundred and twenty-five dollars; to P. S. Austin, on May 3, 1860, one hundred and ninety-seven dollars and fifty-three cents, to respondent, on September 15, 1860, one thousand three hundred and seventy-two dollars, and to Andrew Parks two hundred and ninety-seven dollars; that the second and third bonds, if they have been fully paid, were paid to said Andrew Parks alone, and that no part thereof was ever received or used by respondent; that the endorsements of said two last bonds is in the handwriting of said Parks, and respondent refused to receive, or be a party to, any payment of the said two bonds; that he

cheerfully admits his liability for the one thousand three hundred and seventy-two dollars paid to him as aforesaid, but denies that he is liable for any other sum.

On the 28th day of April, 1877, the cause was referred to a commissioner who made and returned a report which was, on the 7th day of November, 1879, confirmed without exception; and the court by its decree of said date, after reciting, "that said James M. Gray, having paid said purchase-money to the said Andrew Parks and James W. Hoge when they were not authorized to receive more than the cash payment of three hundred dollars, he was bound to see to its proper application, and if not properly applied said Gray and his representatives must look to said Parks and Hoge, respectively, for reimbursement of the amounts paid by him to each of them, respectively, the liability of said Parks and Hoge, as special commissioners, to the estate of said James M. Gray being separate and not joint," it orders and decrees that unless the administratrix of the estate of James M. Gray, deceased, pay to commissioners named therein, within sixty days, "the sum of the said three bonds executed by said James M. Gray to Austin Parks and James W. Hoge special commissioners, for two thousand and eighty-nine dollars and twenty cents each, with legal interest thereon from the 10th day of September, 1859, less the said sum of three hundred and twenty-five dollars paid to Thomas M. Donahue by said Gray on the 10th day of September, 1859, and less the sum of one hundred and ninety-seven dollars and fifty-three and two-third cents, paid by said Gray to P. S. Austin on the 3d day of May, 1860, and less the interest on said last two named amounts from and after the respective days of their payment," that then said commissioners are directed to resell the said tract of land sold by commissioners Parks and Hoge to said Gray, in the manner and upon the terms stated in said decree. The said commissioners are required to give bond in the penalty of ten thousand dollars. The said decree, also, directs and orders, that James W. Hoge do pay to the personal representative of said James M. Gray the said sum of one thousand three hundred and seventy-two dollars which he had in his possession on the 15th day of December, 1869, with interest thereon from that date, with-

in ten days. And the decree concludes as follows: " And it is further ordered that  *  *  *  *  *  nothing in this decree contained is in any manner to preclude or prevent the said administratrix and heirs-at-law of James M. Gray, deceased, from taking such further steps as they may deem necessary in this suit to recover the amounts of money and other things which were paid by said James M. Gray to said Andrew Parks, in taking up said bonds, from the estate of said Andrew Parks, deceased," &c. From this decree the administratrix of said James M. Gray was granted an appeal with *supersedeas* to this Court.

*Smith & Knight* for appellant cited the following authorities: 8 W. Va. 249; 10 Leigh 317; 13 W. Va. 765; 10 W. Va. 220; 8 W. Va. 388; 1 Call. 127; 31 Ill. 62; 3 W. Va. 167; 44 Ill. 184; 8 Pet. 18; 1 Green (Me.) 388.

*John W. English* for appellees cited the following authorities: 75 Va. 116; Acts 1872–3, ch. 51, p. 117, § 4; 26 Gratt. 549; 32 Gratt. 74; 14 W. Va. 387; 18 Wall. 151; 18 Gratt. 82; 1 Bart. Chy. Pr. p. 163; 26 Gratt. 746, 750; 3 W. Va. 232; 27 Gratt. 824.

SNYDER, JUDGE, announced the opinion of the Court:

The essential enquiry in the case is, whether the payments made by James M. Gray to Parks and Hoge are valid payments? The appellant admits that the sale until confirmed was an incomplete contract, a mere offer to purchase, but she claims, and cites authorities which fully sustain the position, that when a judicial sale is confirmed by the court such confirmation relates to and vests the title of the land in the purchaser from the date of the sale—*Taylor* v. *Cooper*, 10 Leigh 317; *Evans* v. *Spurgin*, 6 Gratt. 107; *Hyman, Moses & Co.* v. *Smith*, 13 W. Va. 744, 767. And as a conclusion from this, the appellant insists that, in contemplation of law, any payment made by the purchaser between the day of sale and the day of confirmation, which would have been valid when made, if the sale had been confirmed, is made just as valid by the subsequent confirmation. This conclusion is also sustained by the authorities above cited, but in my view it has

no application to the facts in the case before us. The difficulty here is, that the commissioners who made the sale had no authority to collect the bonds taken for the deferred installments of the purchase-money. Their acts in this regard would have been just as much unauthorized if the sale had been confirmed as they were when it was not confirmed. The said commissioners, it is clearly shown never gave the bond required by the decree. The giving of the bond was a condition precedent to their right to receive any part of said purchase-money. And the purchaser was bound to see that the bond was given and if he paid the purchase-money without such bond having been given the payment was unauthorized and he was still liable for the debt. *Tyler* v. *Toms*, 75 Va. 116; *Hess* v. *Rader*, 26 Gratt. 746; *Lloyd* v. *Erwin*, 29 Gratt. 598.

The said case of *Tyler* v. *Toms*, is very similar in its facts and character to the one before us and for the reasons assigned in the opinion in that case we are satisfied and decide that the payments made by James M. Gray in this case to Parks and Hoge special commissioners were unauthorized and constituted no discharge of the said Gray's bonds—*Blair*, *Com'r.* v. *Core*, 20 W. Va. 265.

It was proven in this cause that Andrew Parks and James W. Hoge were partners in the practice of the law under the firm name of Parks & Hoge, and that as such partners and attorneys they instituted and prosecuted this suit for all the parties interested in the land sold and in the proceeds derived from the sale; and it is, therefore, claimed by the appellant that, inasmuch as the said Parks and Hoge were the attorneys for the parties as well as the commissioners of the court, and having no authority to collect the sale bonds as commissioners, they must be treated as having received payment of said bonds as such attorneys and that they were authorized as such to receive such payment and discharge the debt and the debtor.

The authority of an attorney to receive payment of a debt, which he is employed to recover by suit or collect is well settled, and has been sustained by repeated decisions of this Court— *Wiley* v. *Mahood*, 10 W. Va. 206; *Yoakum* v. *Tilden*, 3 W. Va. 167.

In the case at bar, however, it is not shown that Parks and Hoge pretended to receive the payments made to them by Gray as attorneys for the parties, and the circumstances tend very much to show that they did not in fact so receive them. The bonds were executed to them as special commissioners. They were payable to them as agents or officers of the court. The fund was coming to and subject to the order of the court. The parties themselves to whom it might be ultimately payable had no right to demand it except through the orders of the court. The orders given by Thomas M. Donahue and P. S. Austin, both of which, Hoge states he prepared and which were held and filed in this cause by Gray, were evidently drawn upon the theory that neither the parties nor their counsel were authorized to receive payment from Gray. The said orders are directed to said Parks and Hoge and authorize them to credit the amounts therein mentioned and charge the same to the said Donahue and Austin. If it had been believed, then, that either the parties or their counsel were authorized to receive payment from Gray, it is very improbable that these transactions would have taken this circuitous form.

The attorneys would undoubtedly have had authority to receive the portions ascertained to be due their clients from the commissioners of the court, but until there had been an order made ascertaining the portion or sum due their clients neither they nor the clients themselves by receiving the money from the purchaser could have discharged the debtor. In this case the portion coming to the several owners of the land had not been ascertained. The fund belonged to them all jointly, in different proportions and no one of them had a right to any particular part in severalty. If, therefore, the parties had no right to demand or receive payment, a fortiori, their counsel could have no such power. It is true, that, if payment had been made to a party and it was subsequently determined by the court, that such party was in fact entitled to a sum equal to that thus paid, the court would not require such party to refund the sum so paid in order that a sum equal to it might be repaid him. But such action does not rest upon the ground that the original payment was authorized, but upon the ground that the payment reached its

proper destination. The debtor by making such unauthorized payment takes upon himself the risk of its ultimately coming to the person entitled thereto. He thereby becomes an insurer and remains responsible for any loss or miscarriage before the fund reaches the person to whom the court ultimately determines it is payable. If the fund is found in such person's hands when the order is made by the court for its distribution, the payment will be ratified by the court and the debtor discharged, otherwise he will still be liable for the debt.

In *Tyler* v. *Toms, supra*, the commissioners were, also, counsel for the parties, yet the court held the payment to them unauthorized and gave a decree against the purchaser for the amount so paid to them, because the money was lost.

The money, or other things, paid to Parks and Hoge by Gray in this case, having been lost, or, at least, failed to reach the persons ultimately ascertained to be entitled to it, the bonds given by Gray for the purchase-money were not discharged by such payment, and the circuit court properly held that the land and said Gray's estate were still liable therefor.

It is, also, claimed that the said circuit court erred in allowing interest on the said sum of one thousand three hundred and seventy-two dollars, directed to be paid by James W. Hoge to J. M. Gray's administrator, only from December 15, 1869, instead of from September 15, 1860. Hoge admits in his answer that Gray paid to him, on December 15, 1860, the said sum and that it was credited on said Gray's first bond for the land sold in this suit as of that date. In the case of *Tyler* v. *Toms, supra*, it was distinctly decided that when a party receives money under color of his office although he was in fact unauthorized to receive it, he cannot escape responsibility by relying upon his illegal exercise of authority. A person who having assumed to himself, but improperly neglects, the duties of commissioner or receiver, whilst the parties interested consider him to be acting as such, makes himself responsible for any loss occurring through his neglect. Kerr on Rec'rs, 211–12.

The said Gray having failed to receive credit for said one thousand three hundred and seventy-two dollars, he is entitled to receive back the same with interest from the date

it was paid to said Hoge. The failure of the circuit court to require the payment of the said sum with such interest was clearly erroneous. The said decree of November 7, 1879, is erroneous in another respect. It decrees against the estate of J. M. Gray the sum of said three bonds executed by Gray to Parks and Hoge as commissioners for two thousand and eighty-nine dollars and twenty cents each, with interest thereon from the 10th day of September, 1859, subject to certain credits therein mentioned. It should have been for the aggregate of principal and interest due at the date of the decree, with interest thereon from that date. Chap. 131 sec. 16 Code p. 627.

It is, also, alleged by the appellant that the said decree is erroneous, because the proper parties were not before the court; that the plaintiff, Thomas M. Donahue, claims as assignee of H. R. Austin, Alexander M. Austin and Washington Austin as devisees of Letitia Austin, deceased, and that the only evidence in support of the claim is certain deeds from said devisees to said Donahue, all of which are dated before the death of said Letitia Austin and before the date of her will. These deeds do not purport to convey any lands derived from said testatrix, but simply convey the interest of the grantors in the estate of Morris Austin, deceased, mentioning therein about seven hundred and fifty acres of land in Kanawha county, adjoining the lands of Henson, Morris and others, as a part of the land belonging to said Morris Austin's estate. One of the said deeds conveys the interest of the grantors therein with covenants of general warranty and the others do not.

It seems to me that these grantors H. R., Alexander M. and Washington Austin, and especially the two latter, who are not bound by any covenant of general warranty, should have been made parties to this suit; because if they have not in fact conveyed their interests in the land purchased by said James M. Gray, then unless they are made parties and become bound by said sale, the said Gray would acquire no title to their interests. And he and his estate having been compelled to pay more than once already for said land, it would seem to be right and proper that he should be protected as far as can now be done. In the absence of said

parties it would not be proper for this Court to express an opinion as to whether said deeds from them to said Donahue are sufficient to pass their title to the said land in controversy in this suit or not, but it was error to have made the original sale to Gray without having them before the court and it was also error for the court by its said decree of November 7, 1879, to direct a re-sale of said land in the absence of said parties.

For the reasons stated, I am of opinion that said decree of November 7, 1879, is erroneous, in the particulars mentioned, and that it must be, therefore, set aside and reversed with costs to the appellant. And the cause is remanded to the said circuit court with leave to the plaintiffs to amend their bill by making the said grantors parties and when their bill is so amended the said circuit court·is directed to proceed in the cause according to the principles announced in this opinion and further according to the rules, principles and practice of courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.